| iCLARK, Judge Pro Tern.
The grand jury of Franklin Parish indicted Shannon Cassels, age 17, and Michael McDaniel, age 16, for the first degree murder of Eddie Hendry.[1] Pursuant to a plea agreement, both pled guilty to second degree murder. The trial judge sentenced each to the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Both defendants appeal their convictions, each contending that the trial court’s failure to inform them of the mandatory nature of the penalty for second degree murder rendered their guilty pleas invalid. In addition, MeDaniel argues that the trial court erred in denying his motion to withdraw his guilty plea and that he received ineffective assistance of counsel prior to and at the time of his guilty plea. We remand to the trial court for a hearing to determine whether each defen *862 dant’s guilty plea was voluntarily and intelligently entered.[2]

FACTS

The following facts were adduced from the confessions given by the defendants and from the Franklin Parish Sheriffs Department investigation report:
On the evening of of January 2, 1994, Cassels and McDaniel were at the home of McDaniel’s mother and stepfather. McDaniel fought with his stepfather, who then ordered both of the young men to leave the house. |2Before departing, they stole a .22 pistol, a .30-30 rifle, a .30-06 rifle, and ammunition from McDaniel’s stepfather.
Cassels and McDaniel decided to leave town and began walking to the home of the victim, Eddie Hendry. While en route to Hendry’s home, Cassels and McDaniel discussed shooting Hendry and stealing his truck. They arrived at Hendry’s home, and he agreed to give them a ride to a local store.
As they were driving, McDaniel asked Hendry to pull over because he needed to go to the bathroom. McDaniel got out of the truck, walked to the back, and returned. He told Hendry that the truck had a flat tire. Hendry exited the truck and walked to the back with McDaniel to cheek the tire. While at the rear of the truck, McDaniel shot Hen-dry approximately five times. He then got into the driver’s side of the truck where Cassels was waiting.
The two men drove down the road, turned around, and returned to where they had left Hendry’s body. Cassels and McDaniel picked up Hendry’s body and moved it to a ditch. As they moved the body, Hendry began moaning. Cassels then got the .22 pistol and shot him approximately two or three more times. The two men left town and drove to Hot Springs, Arkansas, where they hid during the next day. They then drove to Memphis, Tennessee.
On January 4, Hendry’s employer reported him missing to the Franklin Parish Sheriffs Department. Through subsequent investigation, the sheriffs department learned that Cassels and McDaniel had driven to Memphis in Hendry’s truck. Memphis law enforcement officials later located Hendry’s Igabandoned truck in a remote area. On January 5, Franklin Parish authorities discovered Hendry’s body.
After being picked up by the Memphis authorities, Cassels and McDaniel were returned to Louisiana. The Franklin Parish authorities advised each of them of their Miranda rights, and both gave statements admitting their involvement in Hendry’s death.

DISCUSSION

Assignment No. 1 — Guilty plea
Pursuant to a plea bargain, each defendant pled guilty to second degree murder. Both complain that the trial judge failed to inform them that the minimum sentence for second degree murder was mandatory life imprisonment without benefit of parole, probation, or suspension of sentence. Accordingly, defendants contend they entered constitutionally deficient guilty pleas.
At Shannon Cassels’ guilty plea hearing, the following exchange took place between the trial judge and defendant:
Q: Mr. Boothe, summarize the charge and give me the maximum fine and penalty, please.
MR. BOOTHE (ASSISTANT DISTRICT ATTORNEY):
He’s charged with the second degree murder on January 2nd of Eddie Hendry here in Franklin Parish. The penalty is life in prison without benefit of probation, parole, or suspension of sentence.
Q: Give me a factual basis, Mr. Boothe.
MR. BOOTHE:
Mr. Hendry was found dead on the, January the 5th on the Dummy Line Road in Franklin Parish. The cause of death was numerous gun shot wounds to the head, killed with a twenty-two calibre [sic] automatic pistol.
*863 |4Q: Do you fully understand the charge, Mr. Cassels?
A: Yes sir.
Q: Is that the charge you desire to plead guilty to?
A: Yes sir.
Q: Do you understand if you plead guilty it will be the duty of the Court to adjudge you guilty and the maximum sentence which the Court might impose would be imprisonment for the rest of your life with no possibility of parole, probation, or suspension of sentence?
A: Yes sir. [Emphasis added.]
A similar exchange took place between the trial judge and defendant Michael McDaniel:
Q: Do you understand if you plead guilty it will be the duty of the Court to adjudge you guilty and the maximum sentence which the Court might impose would be imprisonment for life without any possibility of parole, probation, or suspension of sentence?
A: Yes sir. [Emphasis added.]
The entry of a guilty plea must be a free and voluntary choice on the part of the defendant. State v. Garth, 622 So.2d 1189 (La.App.2d Cir.1993); State v. Smith, 513 So.2d 544 (La.App.2d Cir.1987). A valid guilty plea requires a showing that the defendant was informed of and waived his constitutional rights of trial by jury and confrontation and the right against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971); State v. Monroe, 25,825 (La.App.2d Cir. 03/30/94), 635 So.2d 481. Further, for a guilty plea to be considered voluntarily and knowingly entered, the trial court should apprise the defendant of the possible sentence ranges for the offense to which he pled guilty. State v. Garth, supra; State v. Smith, supra.
This court was presented with a similar situation as that of the instant ease in State v. Smith, supra. In the Smith case, this court held that the trial kludge’s failure to inform the defendant that the mandatory sentence for aggravated rape was life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence rendered his guilty plea invalid. As in the case at bar, the trial judge in the Smith case informed the defendant that “the maximum sentence which the Court might impose will be imprisonment for life on the charge of aggravated rape....” State v. Smith, 513 So.2d at 549 (emphasis added).
In the instant case, the trial judge incorrectly informed defendants of their sentencing exposure at the time they entered their guilty pleas to second degree murder. The trial judge informed defendants that life imprisonment without benefit of parole, probation, or suspension of sentence was the maximum sentence which might be imposed. Instead, the trial judge should have informed them that this sentence was the minimum and mandatory sentence for their guilty plea to second degree murder. State v. Garth, supra; State v. Smith, supra.
The state contends that despite the trial court’s incorrect advisement, there is additional evidence which indicates both defendants were aware of the mandatory nature of the sentence for second degree murder. At Cassels’ sentencing, he made the following statement to the court:
I was gonna [sic] ask you if, uh, a withdrawal from the guilty plea was possible on the basis that, uh, uh, say, incompetent counseling. I was, I had asked to see State evidence which I didn’t get to see and the autopsy report, such as that, and, uh, I didn’t get to see it. Also when, uh, I didn’t realize it as a threat until I advised someone else that, uh, knows the law and, uh, when we came to take a plea bargain our lawyers told us that, uh, it was either take the life, the second degree, take a life sentence, or the death penalty.
McDaniel made a similar statement at his sentencing:
|6I was gonna [sic] ask if I could withdraw my guilty plea too on the same option that Shannon did cause [sic] my lawyer used the death penalty and my, and my, uh, rights was [sic] violated. He used the death penalty, told me, said either I take the death penalty or ya’ll was gonna [sic] kill me and I asked to see some of my paper work and only thing he would let me see was a thing, the copies that me and *864 Shannon seen [sic]. He wouldn’t let me see a [sic] autopsy report or nothing [sic] and my mama also called and asked to see some papers and he wouldn’t show her nothing [sic] either.
Both defendants’ statements indicate the possibility that they were advised by their respective attorneys as to the mandatory nature of the penalty for second degree murder. We have previously stated that the requirement for a voluntary and knowing plea may be satisfied by either the trial judge or by explanation from defense counsel that defendant was counseled about his sentencing exposure before the plea was entered. State v. Mitchell, 561 So.2d 819 (La.App.2d Cir.1990). However, the statements also raise serious questions as to whether each defendant’s plea was voluntarily and intelligently entered. Because of these statements, the defendants’ young ages, and the trial judge’s error in reciting the penalty for second degree murder, we must remand to the trial court for a hearing regarding the voluntary and intelligent nature of each defendant’s plea.
Assignment 2 — Denial of McDaniel’s motion to withdraw his guilty plea Assignment 3 — Ineffective assistance of counsel
■ These assignments concern the trial judge’s denial of McDaniel’s request to withdraw his guilty plea, which was made after the imposition of sentence, based upon his claim that his lawyer used threats regarding the death penalty to coerce him to plead guilty. Because we are remanding for a hearing regarding the voluntary and intelligent nature of both defendants’ guilty pleas, we conclude that these claims are best resolved at this hearing. 17McD aniel and his former attorney could be called to testify about those events regarding his guilty plea. Further, there is nothing in the record to support McDaniel’s ineffective assistance of counsel claim other than his own statement at the sentencing proceeding. McDaniel responded during his guilty plea colloquy that he was not induced by threats or promises in entering the plea. Thus, the hearing would afford an opportunity for the trial court to ascertain the voluntariness of the plea as to this claim.

Error Patent Review

We reviewed each record for any errors patent and found none.

CONCLUSION

For the foregoing reasons, we remand to the trial court for a hearing, within 60 days from the date of this opinion, to determine whether each defendant’s guilty plea was voluntarily and intelligently entered. On remand, each defendant shall be represented by their respective appellate counsel so that their counsel for the guilty plea and sentencing proceedings may be called as witnesses. The trial court shall determine whether either or both of the pleas were voluntarily and intelligently entered without any coercion and after each defendant was counseled or informed of the mandatory nature of the sentence for a conviction of second degree murder. The trial court shall make a finding concerning the voluntariness of the plea(s) within 75 days of this order. Within 90 days of this order, the district court clerk shall supplement this court’s record, in duplicate original, with a certified copy of the transcript of the hearing on remand, all filings made on remand, and a copy of the trial court’s ruling. Upon supplementation of the record, this |8court will undertake appellate review of the findings made by the trial court on remand and enter a final order disposing of the merits of the appeals.
REMANDED WITH INSTRUCTIONS.

. Although the court minutes reflect that both defendants were also charged with carjacking and felony theft, the record contains only an indictment for first degree murder.

. This court, on its own motion, ordered that these appeals be consolidated in the interest of judicial economy.